Case 1:21-cv-00040 Document 19 Filed on 01/06/22 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
January 06, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JORGE LUIS GONZALEZ, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:21-40 |
| | § | |
| KILOLO KIJAKAZI, | § | |
|     Defendant. | § | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the Magistrate Judge is the petition for review of the denial of Disability Insurance Benefits filed by Jorge Luis Gonzalez. Dkt. No. 1.

Having reviewed the record and the pleadings, the Court recommends that the petition be granted. This recommendation follows from the fact that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence.

## **I. Background**

### **A. Procedural History**

On February 2, 2019, Gonzalez applied to receive Supplemental Security Income. Dkt. No. 10-7, p. 186.[1] Gonzalez claimed that his disability effective date was November 1, 2018. Id.

Gonzalez's claim was initially denied. Dkt. No. 10-5, p. 106. On August 27, 2019, after reconsideration, Gonzalez's claim was again denied. Id., p. 103. On May 6, 2020, a hearing was held before an ALJ. Dkt. No. 10-3, p. 45. On June 10, 2020, the ALJ decided that Gonzalez was not entitled to benefits. Id, p. 32. On January 25, 2021, the Appeals Council denied Gonzalez's timely request for review. Id, p. 1. Gonzalez has sought timely review of the Commissioner's decision in this Court.

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

**B. Factual Context**

Gonzalez was born in October 1974 and was 44 years old at the time of his claimed disability onset date. Dkt. No. 10-3, p. 31. Gonzalez had previously worked as a forklift operator. Dkt. No. 10-3, p. 31.

The ALJ found that Gonzalez suffered from "diabetes mellitus, advanced calcified coronary disease, hypertension, degenerative joint disease of the left foot, left plantar calcaneal spur, stasis dermatitis, morbid obesity, and cocaine abuse." Dkt. No. 10-3, p. 23.

**C. Medical History**

During his treatment and the disability process, Gonzalez was examined by multiple doctors. A summary of their observations and findings follows.

On October 3, 2018, Gonzalez went to the emergency room at Valley Baptist Medical Clinic, complaining of lightheadedness and shortness of breath. Dkt. No. 10-10, p. 410. He was discharged from the hospital two days later and diagnosed with chronic kidney disease, chronic obstructive pulmonary disease, chronic hypercapnic respiratory failure, elevated tropin, hyperglycemia, and morbid obesity. Id.

On October 9, 2018, Gonzalez had a follow-up visit with Dr. Josias De Trinidad, his primary care physician. Dkt. No. 10-10, p. 410. Gonzalez was noted to be 5-feet, 11-inches tall and 425.6 pounds. Id., p. 414. He was further diagnosed with obstructive sleep apnea, chronic hypertension, type 2 diabetes, chronic heart failure, and morbid obesity. Id., pp. 415-16.

On October 26, 2018, Gonzalez had another follow-up visit with Dr. De Trinidad. Dkt. No. 10-10, p. 403. He indicated that he was sleeping better with his CPAP machine and that he had pain in his left heel when walking. Id. His blood sugar levels showed improvement, but the doctor noted that Gonzalez only logged his morning blood sugar readings. Id.

On October 30, 2018, Gonzalez was admitted to the hospital for a left foot injury. Dkt. No. 10-10, p. 395. Gonzalez's left foot and ankle were x-rayed. Dkt. No. 10-11, p.

480. The x-ray showed no fractures; he was diagnosed with "soft tissue swelling with no acute bony abnormality." Id.

On November 8, 2018, Gonzalez returned to the hospital, complaining of pain. Dkt. No. 10-10, p. 395. Gonzalez was given a chest x-ray, which showed "prominent interstitial markings . . . which may represent bronchitis or mild edema/pneumonia." Dkt. No. 10-11, p. 478.

On December 6, 2018, Gonzalez had another follow-up visit with Dr. De Trinidad. Dkt. No. 10-10, p. 395. Treatment notes indicated that he had lost 15-20 pounds since his last check-up. Id. It was noted that Gonzalez was suffering possible osteomyelitis in his left foot, given that he had a wound that was slow to heal. Id. Treatment notes indicated that the wound had visible drainage. Id, p. 399. Gonzalez was given wound care. Id.

On January 9, 2019, Gonzalez had another follow-up visit with Dr. De Trinidad. Dkt. No. 10-10, p. 378. The wound on his foot had not healed, had a lot of dead tissue and was giving a foul odor. Id., p. 383. A debridement was performed on the wound, removing the dead tissue. Id., p. 384.

From January 20, 2019, until February 1, 2019, Gonzalez was hospitalized at Valley Regional Medical Center after an emergency appendectomy was performed. Dkt. No. 10-9, p. 318. He was diagnosed with acute bowel perforation, acute renal failure, type 2 diabetes, hyperlipidemia, constipation, hypertension, Vitamin D deficiency, morbid obesity, and the foot wound. Id.

On February 19, 2019, Gonzalez had a follow-up visit with Dr. De Trinidad. Dkt. No. 10-10, p. 371. He reported that he had lost around nine pounds since his December 6th visit. Id. He indicated that the left foot wound was "almost closed at the level of the skin." Id.

On July 30, 2019, Gonzalez was admitted to Valley Baptist Regional Medical Center complaining of nausea, vomiting and diarrhea. Dkt. No. 10-13, p. 508. A drug screen showed that he had cocaine in his system. Id.

3

On September 27, 2019, Gonzalez was again admitted to the hospital, complaining of difficulty breathing and sustained coughing. Dkt. No. 10-13, p. 569. His blood pressure was 172 systolic, 82 diastolic. Id., p. 572. A urine test was positive for cocaine. Id. His CT chest scan showed "advanced calcified coronary artery disease." Id., p. 575. He was diagnosed with pneumonia, bronchitis, congestive heart failure, chronic obstructive pulmonary disease, pulmonary edema, anxiety, substance abuse and apnea. Id., p. 572.

While Dr. De Trinidad diagnosed Gonzalez with multiple ailments over the course of their relationship, he did not provide any medical opinions as to the effect of Gonzalez's ailments on his ability to perform employment-related tasks. However, two state agency consultants – Dr. Cynthia Linardos and Dr. Shabnam Rehman – reviewed Gonzalez's medical records and offered such opinions.

**D. Disability Evaluations**

**1. Dr. Linardos**

On May 7, 2019, Dr. Linardos, a state agency medical consultant, reviewed Gonzalez's medical records in determining a residual functional capacity assessment. Dkt. No. 10-4, pp. 71-79. Dr. Linardos opined that Gonzalez could occasionally lift or carry 20 pounds, could frequently carry 10 pounds, and could stand and/or walk for six hours in an eight-hour workday. Id. She further opined that Gonzalez could frequently climb ramps or stairs, stoop, kneel, crouch, crawl or balance himself, but could only occasionally climb ladders. Id.

**2. Dr. Rehman**

On August 26, 2019, Dr. Rehman, a state agency medical consultant, also reviewed Gonzalez's medical records to assess his residual functional capacity. Dkt. No. 10-4, pp. 80-88. Dr. Rehman opined that Gonzalez could occasionally lift or carry 20 pounds, could frequently carry 10 pounds, and could stand and/or walk for six hours in an eight-hour workday. Id. She further opined that Gonzalez could frequently climb ramps or stairs, kneel, or balance himself, but could only occasionally climb ladders, stoop, crouch, or crawl. Id.

Before turning to and examining the specifics of the ALJ's decision in Gonzalez's case, it is first necessary to understand the disability determination process, as it relates to disability applications.

## II. Determining Disability – The Five-Step Process

A claimant must be disabled to receive benefits under Title II of the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any <u>medically determinable</u> physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>Id</u>. (emphasis added).

To determine whether a claimant is disabled, the Commissioner is required to employ a sequential five-step process. 20 C.F.R. § 404.1520; <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5 (1987). If at any stage the claimant fails to make the required showing, the evaluation process stops, and the claimant is determined to not be disabled. <u>Harrell v. Bowen</u>, 862 F.2d 471 (5th Cir. 1988).

### 1. Step One

In the first step, the claimant must show that he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work that involves "doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If the claimant is working and the work constitutes substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b).

### 2. Step Two

The second step of the process, requires the claimant to show that his or her impairment is medically severe. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Unless the impairment is expected to result in death, it must have

lasted – or be expected to last – for at least 12 months. 20 C.F.R. § 404.1509. If a claimant cannot show a medically severe impairment that meets the duration requirement, the claimant is not disabled under the law. 20 C.F.R. § 404.1520(c). As noted, this showing applies to both physical and mental impairments.

### 3. Step Three

At the third step, the claimant must demonstrate an impairment that is listed in Appendix 1 to 20 C.F.R. § 404.1520(p) (a "listed impairment") – or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant can show that the impairment meets the duration requirement and is a listed impairment, then he or she is adjudged to be disabled without regard to age, education, or work experience. 20 C.F.R. § 404.1520(d). If the claimant cannot show a listed impairment – or its equivalent – the process continues to step four. 20 C.F.R. § 404.1520(e).

### 4. Step Four

In step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

#### a. Residual Functional Capacity.

Residual functional capacity ("RFC") "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Irby v. Barnhart, 180 Fed. App'x. 491, 493 (5th Cir. 2006) (unpubl.) (citing Social Security Ruling 96-8p).[2]

---

2 "The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions." Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

In addressing the symptoms raised by the claimant, the ALJ is required to follow a two-step process. 20 C.F.R. § 404.1529(a); Herrera v. Commissioner of Social Sec., 406 Fed. App'x. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. § 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding." Salgado v. Astrue, 271 Fed. App'x. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both of the following steps must be satisfied.

The first step is a determination of whether the claimant suffers from a medically determinable impairment that is "reasonably capable of producing" the claimed symptoms. SSR 96-7p. Claimed symptoms "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). The ALJ proceeds to the second step only if the claimant is found to have a medically determinable impairment that could cause the alleged symptoms. Winget v. Astrue, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, if the evidence does not objectively support a conclusion that the alleged cause is reasonably capable of producing the symptom, then a finding of no disability is required.

On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed symptom, the inquiry turns to the severity and impact of that symptom. The second step is to evaluate the "intensity, persistence, and limiting effects of the individual's symptoms" on their ability to do basic work activities. SSR 96-7p. In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. Id.

The ALJ also considers treatment – other than medication – that the individual receives or has received for relief of pain or other symptoms. Finally, the ALJ also

considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. Id.

If the ALJ finds that the claimant's current RFC is incompatible with the ability to perform his or her prior relevant work, the process moves to step five.

### 5. Step Five

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC as well as the claimant's age, education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. § 404.1520(g)(1); Masterson, 309 F.3d at 272. Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. § 404.1520(g)(1). If the Commissioner fails to show that the claimant is capable of performing other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. Id.

## III. The ALJ's Decision

In step one, the ALJ found that Gonzalez had not engaged in substantial gainful activity since December 13, 2018. Dkt. No. 10-3, p. 22. That finding is not challenged.

In step two, the ALJ found that Gonzalez suffered from diabetes mellitus, advanced calcified coronary disease, hypertension, degenerative joint disease of the left foot, left plantar calcaneal spur, stasis dermatitis, morbid obesity, and cocaine abuse. Dkt. No. 10-3, p. 23. By implication, the ALJ found that these impairments had either lasted for 12 months or could be expected to last at least 12 months. 20 C.F.R. § 404.1509. This finding is also

unchallenged.

The ALJ – in her step three analysis – found that Gonzalez did not have an impairment or combination of impairments that "equal[ed]" a listed impairment, moving the process to step four. Dkt. No. 10-3, p. 25.

In step four, the ALJ found that Gonzalez had the RFC to perform sedentary work, within the following limitations: "except that he can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; and never balance nor climb ladders, ropes, or scaffolds. He cannot operate a motor vehicle as an occupational requirement, nor work safely around extraordinary hazards, such as unprotected heights or dangerous machinery (having exposed moving parts or requiring agility in order to evade)." Dkt. No. 10-3, p. 26.

In arriving at this finding, the ALJ stated that the opinions of the state agency consultants were "unpersuasive," given that Gonzalez suffers from "diabetes mellitus, advanced calcified coronary disease, hypertension, and morbid obesity." Dkt. No. 10-3, p. 30.

Rather, the ALJ based the RFC finding on the "objective medical evidence," which she stated, "does not establish that his conditions are debilitating." Dkt. No. 10-3, p. 30.

The ALJ found that Gonzalez was unable to perform his past relevant work as a forklift operator. Dkt. No. 10-3, p. 31.

Based upon the testimony of the vocational expert, in step five, the ALJ found that there were sufficient jobs in the national economy, such as "final assembler," "compact assembler" and "surveillance system monitor," that Gonzalez could still perform. Dkt. No. 10-3, p. 32.

Based upon Gonzalez's RFC and his ability to still perform certain work, the ALJ concluded that Gonzalez was not disabled. Dkt. No. 10-3, p. 32.

### IV. Applicable Law

#### A. Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is

limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).

"Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The decision by the ALJ must "stand or fall" on the rationale set forth in the ALJ's opinion. Newton v. Apfel, 209 F.3d at 455. The Court will not uphold the ALJ's decision by finding or creating a different, better, or more adequate basis. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947). "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." Orr v. Commissioner of Social Security Administration, Civil No. 3:08-CV-1592-K, 2009 WL 2337793 at *9 (N.D. Tex. July 27, 2009) (citing Bagwell v. Barnhart, 338 F. Supp.2d 723, 735 (S.D. Tex. 2004)).

Furthermore, the Court generally employs a harmless error standard in reviewing administrative proceedings. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required"). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard). However, "when the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." Garcia v. Berryhill, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018) (collecting cases).

**V. Analysis**

Gonzalez raises a single claim to relief, which the Court restates as follows: the ALJ rejected all medical opinions in formulating Gonzalez's RFC, making it unsupported by substantial evidence.

The Court concurs with that argument and finds that the ALJ's determination of Gonzalez's RFC was not supported by substantial evidence, mandating remand.

"Although some determinations, such as disability and RFC, are legally reserved for the Commissioner, Social Security guidelines require adjudicators making these determinations to consider the opinions of medical sources." Giles v. Astrue, 433 F. App'x 241, 247 (5th Cir. 2011).

In this case, the ALJ rejected every medical opinion as to Gonzalez's physical limitations. The state agency consultants believed that Gonzalez could occasionally lift or carry 20 pounds, could frequently carry 10 pounds, and could stand and/or walk for six hours in an eight-hour workday. Dkt. No. 10-4, pp. 71-88. They also believed that Gonzalez could frequently climb ramps or stairs, kneel and balance himself. Id. The ALJ rejected these opinions because they were not consistent with the medical evidence that Gonzalez suffered from type 2 diabetes, advanced calcified coronary artery disease, hypertension, and morbid obesity. Dkt. No. 10-3, p. 30.

The ALJ is permitted to give no weight to unpersuasive medical opinions. Chambliss v. Massanari, 269 F.3d 520, 523 (5th Cir. 2001). This decision, however, poses a problem: if all of the medical opinions are set aside, there is no evidence in the record as to how Gonzalez's physical ailments would impact his ability to work.

After rejecting these opinions, the ALJ reviewed the medical records and came to her own conclusion as to the effect of Gonzalez's impairments. The ALJ concluded that Gonzalez could perform sedentary work, within the following limitations: "except that he can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; and never balance nor climb ladders, ropes, or scaffolds. He cannot operate a motor vehicle as an occupational requirement, nor work safely around extraordinary hazards, such as unprotected heights or

11

dangerous machinery (having exposed moving parts or requiring agility in order to evade)." Dkt. No. 10-3, p. 26. Thus, the ALJ's conclusion, and the opinion leading up to it, are unsupported by substantial evidence. Williams v. Astrue, 355 Fed. App'x. 828, 832 (5th Cir. 2009) (unpubl.) (ALJ may not rely on his own medical opinions, derived from raw medical records, to determine the limitations a disability has on a claimant's ability to work) (citing Ripley).

Williams – although an unpublished decision – contains similar facts and is instructive. In Williams, the claimant alleged that she was disabled because of pain in her lower back and shoulders, muscle spasms, and carpal tunnel syndrome. Williams at 829. Three doctors examined Williams and opined that she was limited to sedentary work. Id. The ALJ made specific findings discounting the opinions of the three doctors. Williams at 831. The ALJ found that Williams could stand or walk for six hours in an eight-hour workday, which equates to light work. Id. The ALJ based his decision on the raw medical records that showed "only mild to moderate stenosis" in Williams's lumbar spine and "only posterior spurring in her cervical spine." Id.

The Fifth Circuit concluded that, even if the ALJ was entitled to discount the opinions of the three doctors, there was no evidence supporting the ALJ's finding that Williams could stand or walk for six hours in an eight-hour workday. Williams at 831. With no medical opinion evidence available – based upon the ALJ discounting the doctor's opinions – there was no evidence that Williams could perform light work. The Fifth Circuit, citing Ripley, noted that the ALJ "may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." Williams at 832, n. 6. Because no substantial evidence existed as to the effects of Williams's impairments on her ability to stand or walk for six hours in an eight hour workday, the Fifth Circuit remanded the case for further development. The ALJ's conclusions in the instant case suffer from similar defects.

Accordingly, the Court must consider whether this error impacted Gonzalez's substantial rights.

To merit relief, Gonzalez must show that his rights were substantially harmed. Mays v. Bowen, 837 F.2d at 1364 ("Procedural perfection in administrative proceedings is not required"). The Court should not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard). The errors made by the ALJ in determining Gonzalez's RFC, however, were not harmless.

From the content of the ALJ's decision and the evidence upon which she relied, it is unclear at what level Gonzalez's RFC should have been classified. "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). If the fact-finder ignores the opinions of the state agency consultants, there is no evidence upon which to identify Gonzalez's actual level. See Garcia, 2018 WL 1513688, at *3 ("the ALJ cannot reject the only physicians to opine on Plaintiff's limitations, interpret the raw medical data himself, and impose an RFC in contravention of all opining medical sources.").

This result is contrary to the ALJ's obligation to fully and fairly develop the record. Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996). The record does not establish Gonzalez's capacity to fulfill various duties on the job site. The absence of evidence sufficiently establishing this critical point short-circuited the five-step process. Because substantial evidence does not exist to support the ALJ's decision, the case must be remanded for further development. Williams, 355 Fed. Appx. at *4.

## VI. Recommendation

It is recommended that the petition for review of the denial of Disability Insurance Benefits filed by Jorge Luis Gonzalez be granted. This case should be remanded to the Commissioner of Social Security for further hearings not inconsistent with this report and recommendation.

The parties have fourteen (14) days from the date of being served with a copy of

this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. <u>Battle v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a <u>de novo</u> review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a <u>de novo</u> review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on January 6, 2022.

*/s/ Ronald G. Morgan*
Ronald G. Morgan
United States Magistrate Judge